UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CHARLENE J. STREET,<br><br>    Plaintiff,<br><br>  v.<br><br>KILOLO KIJAKAZI,<br><br>    Defendant. | Case No. 5:21-cv-05697-EJD<br><br>**ORDER ON MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: ECF Nos. 34, 39 |

Plaintiff Charlene J. Street ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) to obtain review of a final decision by the Commissioner of the Social Security Administration[1] denying her claim for Social Security Disability Insurance ("SSDI") benefits. In a Motion for Summary Judgment, Plaintiff seeks an order reversing the decision and awarding benefits, or alternatively, remanding the action to the Commissioner for further administrative proceedings. ECF No. 34 ("Street MSJ"). The Commissioner opposes Plaintiff's motion and seeks summary judgment affirming the decision denying benefits. ECF No. 39 ("Kijakazi MSJ").

Because the record reveals the decision is supported by substantial evidence, Plaintiff's motion will be denied, and the Commissioner's cross-motion will be granted.

I.   **BACKGROUND**

 **A.**   **Procedural Background**

On April 15, 2019, Ms. Street filed an application for Title II disability and disability

---

[1] The current Acting Commissioner of Social Security, Dr. Kilolo Kijakazi, is automatically substituted as defendant in place of her predecessor. Fed. R. Civ. P. 25(d).

Case No.: 5:21-cv-05697-EJD
ORDER ON MOTIONS FOR SUMMARY JUDGMENT

1

1  insurance benefits, alleging disability beginning November 27, 2018.  Administrative Record
2  ("AR"), ECF No. 16, at 189–192.  The Social Security Administration ("SSA") denied Ms.
3  Street's application on June 28, 2019, finding that her "condition is not expected to remain severe
4  enough for 12 months in a row to keep [her] from working."  AR at 104–08.  Ms. Street requested
5  reconsideration and, on August 29, 2019, the SSA affirmed its prior decision, citing again that "it
6  is medically reasonable to expect that [her] condition will continue to improve."  AR at 116–21.
7  Ms. Street then requested a hearing, and on September 29, 2020, Administrative Law Judge
8  ("ALJ") Ruxana Meyer held the hearing telephonically on account of COVID-19.  AR at 15.  On
9  December 30, 2020, the ALJ determined that Ms. Street was not disabled under the Social
10 Security Act because her drug addiction or alcoholism ("DAA") was material to a finding of
11 disability.  *Id.*  On May 28, 2021, the SSA Appeals Council denied review, making ALJ Meyer's
12 decision the final decision of the Commissioner of Social Security.  AR at 1.
13       Ms. Street filed the present action before the Court on July 26, 2021.  The Court heard oral
14 argument on the motions on August 31, 2023.
15       **B.    ALJ Meyer's Decision**
16       ALJ Meyer first determined that: (1) Ms. Street had not engaged in substantial gainful
17 activity since her disability onset date (AR at 18); (2) Ms. Street's bipolar disorder, anxiety
18 disorder, personality disorder, cannabis use disorder, alcohol use disorder, and psoriasis were
19 "severe" impairments that more than minimally affected her ability to work (*id.*); and (3) Ms.
20 Street's conditions did not meet or medically equal any impairment listed in 20 C.F.R. §
21 404.1520(c)–(d).  AR at 18–21.  In so determining, ALJ Meyer found that Ms. Street had "mild"
22 limitations in understanding, remembering, or applying information; "mild" limitations in
23 interacting with others; "moderate" limitations in her concentrating, persisting, or maintaining
24 pace; and "marked" limitations in adapting or managing herself.  AR at 19–20.  ALJ Meyer next
25 found that Ms. Street had the residual functional capacity ("RFC") to perform work at all
26 exertional levels but was precluded from work performed at a production pace, involving exposure
27 to hazardous machinery, unprotected heights, bodies of water, or extended exposure dusts, fumes,
28 Case No.: 5:21-cv-05697-EJD
   ORDER ON MOTIONS FOR SUMMARY JUDGMENT
                                          2

1   or pulmonary irritants. AR at 22. Additionally, Ms. Street would incur absences approximately
2   three days per month. *Id.* With this RFC, ALJ Meyer consulted a vocational expert and found
3   that Ms. Street could not perform any of her past work or any other jobs that existed in significant
4   numbers in the national economy. AR at 23–24. Accordingly, ALJ Meyer preliminarily
5   concluded that Ms. Street was "disabled." *Id.* However, because Ms. Street's conditions included
6   alcohol and cannabis disorders, ALJ Meyer was required to evaluate the materiality of substance
7   abuse to this determination.

8   Per 20 C.F.R. § 404.1535 and Social Security Ruling ("SSR") 13-2p, ALJ Meyer
9   proceeded to evaluate Ms. Street's functional limitations again but this time in the absence of
10  DAA. ALJ Meyer reached many of the same conclusions as to the first three determinations. AR
11  at 25–27. With respect to mental functioning, however, ALJ Meyer found that, Ms. Street would
12  only have "moderate" limitations in adapting or managing herself in the absence of DAA, as
13  opposed to "marked" limitations if DAA were included. AR at 26. ALJ Meyer also found that
14  Ms. Street would have much of the same RFC, but she would not need to incur any significant
15  absences in the absence of her substance abuse disorders. AR at 27. In so finding, ALJ Meyer
16  considered that Ms. Street's mental status examination during periods of sobriety were "largely
17  within normal limits" and that several of Ms. Street's prescribed medications that effectively
18  controlled her symptoms had to be terminated because of her daily cannabis usage. *Id.* Having
19  found that Ms. Street's RFC without DAA would not include any significant absences, ALJ Meyer
20  consulted the vocational expert again who testified that Ms. Street would be able to perform her
21  past work (broker clerk or administrative assistant) with the non-DAA RFC. AR at 29.

22  Because Ms. Street's RFC without DAA would allow her to perform her previous work,
23  ALJ Meyer determined that the substance use disorders are a material contributing factor to Ms.
24  Street's disability determination. AR at 30. Accordingly, ALJ Meyer concluded that Ms. Street
25  was not disabled within the meaning of the Social Security Act during the relevant period. *Id.*

Case No.: 5:21-cv-05697-EJD
ORDER ON MOTIONS FOR SUMMARY JUDGMENT
3

## II.     LEGAL STANDARD

### A.     Standard for Reviewing the ALJ's Decision

This Court has the authority to review an ALJ's disability decision.  42 U.S.C. § 405(g).  The scope of a district court's review of an ALJ's denial of disability benefits is limited to determining whether the decision was supported by substantial evidence in the record or whether it was based on legal error.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  "Substantial evidence means more than a scintilla but less than a preponderance." *Id.*  This standard requires relevant evidence, considering the record in its entirety, that a reasonable person might conclude is adequate to support a conclusion.  *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

The Court must review the record in its entirety, considering evidence that supports and weakens the ALJ's conclusion.  *Robbins v. SSA*, 466 F.3d 880, 882 (9th Cir. 2006).  The ALJ's determination must be affirmed so long as it is a rational interpretation of the evidence in the record.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  If the evidence reasonably could support two conclusions, the Court "may not substitute its judgment for that of the Commissioner" and must affirm the decision.  *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

### B.     Standard for Determining Disability

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  The impairment must also be so severe that a claimant is unable to do previous work, and cannot "engage in any other kind of substantial gainful work which exists in the national economy," given the claimant's age,

Case No.:   5:21-cv-05697-EJD
ORDER ON MOTIONS FOR SUMMARY JUDGMENT
4

education, and work experience.  42 U.S.C. § 423(d)(2)(A).

"The claimant carries the initial burden of proving a disability."  *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (observing that the claimant must satisfy the burden on the first four steps of the evaluative process).  If the claimant proves a prima facie case of disability, then the Commissioner has the burden of establishing the claimant can perform "a significant number of other jobs in the national economy."  *Thomas*, 278 F.3d at 955; *Bowen*, 482 U.S. at 146 n.5 ("[T]he Secretary bears the burden of proof at step five, which determines whether the claimant is able to perform work available in the national economy.").  "The Commissioner can meet this burden through the testimony of a vocational expert or by reference to the Medical Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2."  *Thomas*, 278 F.3d at 955.

The ALJ evaluates Social Security disability cases using a five-step evaluation process.  20 C.F.R. § 416.920.  The steps require the following analysis:

> (1) The ALJ must first determine whether the claimant is presently engaged in substantially gainful activity. 20 C.F.R. § 416.920(b).  If so, the claimant is not disabled; otherwise the evaluation proceeds to step two.
>
> (2) The ALJ must determine whether the claimant has a severe impairment or combination of impairments. 20 C.F.R. § 416.920(c). If not, the claimant is not disabled; otherwise the evaluation proceeds to step three.
>
> (3) The ALJ must determine whether the claimant's impairment or combination of impairments meets or medically equals the requirements of the Listing of Impairments. 20 C.F.R. § 416.920(d). If so, the claimant is disabled; otherwise the analysis proceeds to step four.
>
> (4) The ALJ must determine the claimant's residual functional capacity despite limitations from the claimant's impairments.  20 C.F.R. § 416.920(e).  If the claimant can still perform work that the individual has done in the past, the claimant is not disabled.  If the claimant cannot perform the work, the evaluation proceeds to step five.  20 C.F.R. § 416.920(f).
>
> (5) In this step, the Commissioner has the burden of demonstrating that the claimant is not disabled. Considering a claimant's age, education, and vocational background, the Commissioner must show that the claimant can perform some substantial gainful work in the

national economy.  20 C.F.R. § 416.920(g).

An applicant is "disabled" if their "physical or mental impairment or impairments are of such severity that [they] [are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  A five-step process is used to make this determination.  20 C.F.R. §§ 404.1520(a)(4).  In steps one through four, the claimant carries the burden of proof; in step five, however, the ALJ carries the burden of proof.  *Burch*, 400 F.3d at 679.  In the fifth step, the SSA considers the applicant's residual functional capacity, age, education, and work experience to see if the applicant can "make an adjustment to other work."  If an adjustment can be made, the applicant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(v).

## III.  DISCUSSION

In her motion, Plaintiff challenges the ALJ's decision on the grounds that (1) the medical evidence of record does not support the ALJ's finding that "the substance abuse disorders are a contributing factor material to the determination of disability because the Claimant would not be disabled in the absence of the substance abuse disorders," and (2) the ALJ improperly "parse[d] Ms. Street's [activities of daily living] in reaching her RFC finding."  Street MSJ 3–8.

The Court's role in reviewing the ALJ's conclusion is limited to determining whether the denial of benefits is supported by substantial evidence in the administrative record.  In doing so, the Court cannot consider any new evidence; it can only review the ALJ's opinion and the evidence already in the record.  The Court may only reverse the decision if it is not supported by substantial evidence or if the decision was based on legal error.  In other words, the Court must ask whether a reasonable mind, based on the evidentiary record, could reach the ALJ's holding.  *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

### A.  The ALJ's DAA Findings

Plaintiff first challenges the ALJ's finding that her substance abuse disorders were material to the determination of disability.  Street MSJ 3.  Plaintiff argues that, to support a finding that a DAA is material, there must be evidence in the record that establishes that Plaintiff (with a co-

Case No.: 5:21-cv-05697-EJD
ORDER ON MOTIONS FOR SUMMARY JUDGMENT
6

occurring mental disorder) would not be disabled in the absence of the DAA. *Id.* at 4. Plaintiff argues that she maintained "overall abstinence," and was still unable to return to her former work or any alternate occupations. *Id.*

To demonstrate her "overall abstinence," Ms. Street argues that other than her two relapses on September 17, 2019 and May 20, 2020, which were prompted by personal and family conflicts, no other reports of relapses were reported. *Id.* at 4. Between these two relapses, and in the time since, Plaintiff notes that she attended therapy that included "Relapse Prevention." *Id.* (identifying medical notes in record stating "[patient] in sustained remission for severe alcohol disorder" and "[patient] states that she has had cravings to use alcohol but has resisted those and has consistently taken Antabuse as dispensed by her husband").

The ALJ recognized Plaintiff's reported efforts in abstaining from alcohol, with the aid of Suboxone or Antabuse. *See* AR 27 ("The claimant reported [in December 2018] she was currently sober on Antabuse" and "she reported abstinence from alcohol" in June 2019), *see also id.* at 407 (reporting in December 2018 that Plaintiff had been "sober since age 30 with 'slips' with last alcohol intake on 7/14/18 (with 2 beers)"), 413 (reporting that "client denie[d]" using substances in December 2018).

The ALJ also identified treatment notes showing that Plaintiff continued using cannabis after her disability onset date of November 27, 2018. The record supports this finding. AR 27 ("daily use of marijuana" reported (citing AR 790 ("smoked cannabis ('a full pipe - 3 to 4 hits')") in September 2019)); AR 411 ("Current Substances Used: cannabis – daily," in December 2019); AR 1509 (Plaintiff "[s]tates she has been using cannabis daily including today," in May 2020). The ALJ noted Plaintiff continued using cannabis "despite having agreed with providers and promising in July 2018 that she would abstain." *Id.* (citing AR 429 (physician reporting in July 2018 that Plaintiff "Promised [physician] she will not use Marijuana anymore"), 584 ("Patient agrees to abstain from cannabis and produce a negative drug screen in the next 4 weeks")). The record also includes treatment notes dated September 20, 2019 that report Plaintiff has used cannabis "daily" for "anxiety since over a year ago." AR 790.

1    The ALJ explained that this "continued use of cannabis at times during 2018 and 2019 []
2    did not appear to exacerbate her mental symptoms in the same way as her alcohol relapses." AR
3    21. However, Plaintiff was not permitted to take certain medications due to her cannabis use. The
4    ALJ recognized that when Plaintiff's "[d]rug screen was positive for cannabis," it "precluded
5    ongoing use of clonazepam." AR 27 (citing AR 584). Plaintiff reported on July 8, 2019, that she
6    was "doing pretty good," "coping much better with her mother's terminal illness," and feeling
7    "calmer" with her mood swings "stabilized." AR 571. At that time, Plaintiff reported that "she
8    prefers not to take clonazepam anymore." *Id.*

9    Plaintiff later indicated that her inability to access certain medications because of cannabis
10   use exacerbated her symptoms. *See* AR 973 ("because of this ridiculous pot rule I'm screwed!!!
11   I'm trapped in what can I do about pain and anxiety when I can't get what I need so I'm in a
12   vicious cycle!!! I'm trying to stop pot long enough but It [sic] never works"); *see also id.* at 1352
13   (physician rejecting Plaintiff's request for "pain meds" on April 9, 2020, until Plaintiff takes
14   "urine drug screen" and reminding Plaintiff "[w]e stopped Norco last year because [Plaintiff]
15   chose to use Marijuana"). On May 20, 2020, Plaintiff reported that suicidal thoughts and
16   hopelessness peak "when she is drinking alcohol, which is about daily to every other day."
17   AR 1515. She also reported smoking cannabis "all day-everyday." *Id.* Plaintiff also reported that
18   her "[h]usband son and all neighbors smoke Cannabis as well ('it's everywhere')" (AR 357), and
19   that her "substance use [was] out of control," in part because "people in her house also use[d]
20   cannabis and alcohol" (AR 1515). Plaintiff's physician also indicated in treatment notes that
21   Plaintiff "bemoans that she is not prescribed certain medications because she uses cannabis."
22   *Id.* at 1515. On May 21, 2020, Plaintiff's physician again denied Plaintiff's request for medication
23   because her "urine test still show[ed] Marijuana." *Id.* at 1530.

24   Plaintiff argues that a claimant's "occasional maladaptive use or a history of occasional
25   prior maladaptive use of alcohol or illegal drugs does not establish that the claimant has a
26   medically determinable Substance Use Disorder." Street MSJ 4. As indicated above, the record
27   supports a finding that Plaintiff suffered from more than an occasional maladaptive use of alcohol

Case No.: 5:21-cv-05697-EJD
ORDER ON MOTIONS FOR SUMMARY JUDGMENT
8

or illegal drugs.

Turning to whether the DAA was "material," the ALJ concluded that the evidence supported finding that Plaintiff's substance use disorders involving cannabis and alcohol were material to a finding of disability, and "in the absence of drug addiction and alcoholism," Plaintiff would be capable of performing her past work. AR 15. The Court finds this conclusion was also supported by substantial evidence in the record.

Plaintiff informed her provider in May 2020, that "when she [was] not using alcohol, suicidal thoughts decrease and abate." AR 1515. She also recognized that her "problem with these substances" affected her relationships and jobs. *Id.*; *see also id.* at 599 ("Patient states she just acts crazy when she drinks alcohol and say[s] things she does not mean"). The ALJ described that "during times of alcohol abuse," Plaintiff had "marked limitations in adapting and managing herself." AR 20 (observing that Plaintiff reported losing control "in serious ways" and "do[ing] impulsive and highly risky dangerous activities" when Plaintiff drinks alcohol) (citing AR 401). The ALJ explained that "[a]bsent the[] acute symptoms" stemming from the relapse, Plaintiff "was driving to Modesto to provide care to her ailing mother and considering a caregiving career." *Id.* (citing AR 156); *see also* AR 396 ("Plaintiff states that she is a certified caregiver and may take up that career in the future").

Plaintiff also reported shortly after her relapse, on September 20, 2019, that she was "sleeping well, eating well, still engaging in pleasurable activities (exercising at gym)," had "no excessive guilt, ha[d] good energy levels, and ha[d] no issues with concentration." AR 790. Additional evidence in the record supports the ALJ's finding that in the absence of Plaintiff's use of cannabis and alcohol, Plaintiff would be capable of performing her past work. For example, in September 2018, Plaintiff reported "not drinking alcohol for quite some time" and being "clean and sober from cannabis for over 2 months." AR 421. During that time, she stated that "her symptoms of anxiety and mood swings" were "slightly improved" and "her work performance is significantly improved." *Id.* Although her anxiety and insomnia were "still present," the symptoms were present "to a more tolerable degree." *Id.*

Case No.: 5:21-cv-05697-EJD
ORDER ON MOTIONS FOR SUMMARY JUDGMENT
9

Additionally, when reporting about when she "had a melt down" and "drank alcohol" in September 2019, Plaintiff told her physician that she "become[s] self destructive at times" but that since the relapse, she was feeling better and going to the gym. AR 760. When asked from her physician whether Plaintiff "want[s] assistance from our addiction medicine dep[artment] for sobriety also from both alcohol and cannabis," Plaintiff responded that she would be joining "IOP"—intensive outpatient program—because it is "[p]robably a good idea for [her] just to get extra help." *Id.* Also in September 2019, following the relapse, Plaintiff reported she was "sleeping well, eating well, still engaging in pleasurable activities (exercising at gym), [had] no excessive guilt, ha[d] good energy levels, and ha[d] no issues with concentration." AR 790. As another example, in May 2019, when Plaintiff "denie[d] any alcohol abuse and denie[d] any suicidal ideation," her treatment notes indicated that Plaintiff, in general, "appear[ed] relatively stable, despite the[] recent stressors" in her life. AR 331; *see also id.* at 363 (in March 2019, "Patient reported that she is better due to mild (hypo)mania but is stable"); 353 (reporting "no symptoms of grandiosity, poor sleep, inflation or pressured speech" in April 2019 and Plaintiff finding group therapy "helpful with regulating her emotions and gaining better coping skills"); 396 (denying substance abuse in January 2019 and reporting that treatment program "was quite helpful," her "[s]leep has improved and mood is much more stable on her current medication regimen," and Plaintiff may pursue caregiver career in the future although she requested "time off for a few more weeks before she c[ould] pursue looking for employment"); 429 (reported in July 2018 having stopped cannabis use and "[c]hronic pain is manageable with 3 Norco/day").

In light of the above, the Court finds that the ALJ's determination that Plaintiff had "severe" ongoing alcohol and cannabis use disorders that were material to the ALJ's "disabled" finding under the Act was supported by substantial evidence in the record.

### B. The ALJ's Determination that Plaintiff's Symptoms Were Inconsistent with the Medical Evidence

Plaintiff contends that the ALJ erred because the progress reports and other evidence in the record demonstrates she remained unable to return to her former work or any other occupations.

Case No.: 5:21-cv-05697-EJD
ORDER ON MOTIONS FOR SUMMARY JUDGMENT
10

Street MSJ 4–8. Plaintiff argues that the "written statements of [her] spouse and her written and hearing statements best represent her ADLs, not those distilled by the ALJ." *Id.* at 8.

Under 42 U.S.C. § 423(d)(5)(A), "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability," and supporting evidence "established by medically acceptable clinical or laboratory diagnostic techniques" is required to reach a conclusion as to whether the individual is under a disability. *See Vela v. Kijakazi*, No. 23-35075, 2023 WL 8592873, at *1 (9th Cir. Dec. 12, 2023) (finding no error in rejecting medical opinions where "[s]ubstantial evidence supported the conclusion that [medical] opinion was not persuasive" and no error in finding claimant's "symptom testimony was not credible" where ALJ's reasons were supported by substantial evidence).

Here, the ALJ found that Plaintiff's allegations regarding her inability to work, during periods when she was not using alcohol or cannabis, were not consistent with other evidence in the record. The ALJ reasoned that "the conclusory preclusion of work is not consistent with [Plaintiff's] overall benign mental status examinations and ability to engage in a variety of activities of daily living during the period at issue." AR 21. During the times Plaintiff "was not experiencing an alcohol relapse, she was generally observed to show intact and linear thought process, as well as good insight and judgment, with an absence of more severe findings such as self-harm ideation or psychosis." *Id.* at 22. Specifically, the ALJ explained that Plaintiff "drives significant distances to commendably provide care and comfort to a family member regularly," and she "requested her providers extend her disability status in order to handle her mother's housing and rent payments." *Id.*

The Court does not challenge Plaintiff's written statements or dispute that Plaintiff experienced symptoms that impacted her life and ability to work. However, on the record before it, the Court finds the ALJ has provided well-supported grounds for rejecting "the conclusory statements that the claimant cannot attend work." *Id.* at 21. The ALJ observed that the record supported her allegations that she was unable to work, but only when she was engaged in substance abuse. AR 22 ("the record supports a finding that with substance abuse, the claimant

1    has marked limitations precluding a regular and continuing schedule"). As explained above, the

2    record demonstrates that Plaintiff, when sober, believed treatment was helping, hoped to pursue a

3    career in caretaking, participated in activities like going to gym, appeared relatively stable, was

4    observed to show intact and linear thought process, and experienced improvements in her chronic

5    pain and psychosis. *See supra*, Part III(A).

6          The ALJ also observed that Plaintiff was laid off, along with other employees because the

7    company was "having financial issues"—not as a result of her medical conditions. AR 29 (citing

8    AR 233–35; *see also* AR 56–57 (testifying that "a very small group of us" were let go, aft the

9    company "just ran out of money"); 357 ("laid off from her Job in November [2018]"); 401

10   (reporting she "does not feel that she was terminated at her job for her increased psychiatric

11   symptoms"); 413 ("let go from her job along with another employee as they were having financial

12   issues")). The ALJ could consider the reasons Plaintiff stopped working to assess Plaintiff's

13   ability to work absent substance use. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001)

14   (affirming the ALJ's rejection of allegations of disabling symptoms because the claimant stopped

15   working because of a layoff and not because of any medical issues).

16         Accordingly, the Court does not find that the ALJ erred by discounting conclusory

17   statements regarding Plaintiff's ability to work. *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir.

18   2022) ("When objective medical evidence in the record is *inconsistent* with the claimant's

19   subjective testimony, the ALJ may indeed weigh it as undercutting such testimony") (emphasis in

20   the original).

21         **C.**    **The ALJ's Step Four Finding**

22         Plaintiff also contends that the ALJ's step four finding is "unsustainable" in light of the

23   vocational expert's testimony. Street MSJ 8. The ALJ asked the vocational expert two

24   hypothetical questions. AR 76. In the first question, the ALJ asked the vocational expert to

25   consider the following:

26       [A]n individual that can perform work at all exertional levels. However, this
    individual is precluded from doing work that is performed at a production pace,
27       such as an assembly line. This individual can do work that does not involve

28   Case No.: 5:21-cv-05697-EJD
ORDER ON MOTIONS FOR SUMMARY JUDGMENT
12

exposure to hazardous moving machinery or unprotected heights, bodies of water, and no more than occasional exposure to dust, fumes, and pulmonary irritants.

AR 76.

In the second hypothetical, the vocational expert was asked to consider an individual with "all the same limitations as hypothetical 1," but "[i]n addition, this person will miss work approximately three times a month." *Id.* The vocational expert responded to the second question that there was no work in that hypothetical scenario that a person could perform. *Id.* This, Plaintiff argues, combined with the "medical evidence of record," is "more reflective of Ms. Street's mental RFC." Street MSJ 8.

Plaintiff takes issue with the ALJ's conclusion considering the vocational expert's testimony that there was "no work" a hypothetical person in Plaintiff's position could perform. However, the ALJ properly considered this testimony and concluded that the "[b]ased on the testimony of the vocational expert, considering all of the claimant's impairments, *including the substance use disorders*, the claimant was unable to make a successful vocational adjustment to work that existed in significant numbers in the national economy." AR 24 (emphasis added). Plaintiff was found to be "disabled" under step four. However, because Plaintiff's "severe" impairment included alcohol and cannabis use disorders, the ALJ properly proceeded to evaluate the extent to which Plaintiff's mental and physical limitations would remain in the absence of her substance abuse. 20 C.F.R. § 404.1535. The ALJ considered again the vocational expert's testimony and found that, when taking into account Plaintiff's conditions—excepting her substance use disorders—Plaintiff was "able to perform past relevant work of both composite jobs as they were actually performed. AR 29–30. *See also* 20 C.F.R. § 404.1520(f).

Accordingly, the Court does not find that the ALJ erred by concluding that Plaintiff could perform past relevant work in the absence of substance abuse.

* * *

In sum, the Court finds that the ALJ's decision was supported by substantial evidence in the record. The ALJ appears to have carefully considered the evidence and testimony before concluding that Ms. Street is under a disability, but that a substance use disorder is a contributing

Case No.: 5:21-cv-05697-EJD
ORDER ON MOTIONS FOR SUMMARY JUDGMENT
13

factor material to the determination of that disability. Substantial evidence in the record supports that finding. The record also demonstrates that in the periods when Ms. Street reported not using, she was also observed to be happier, healthier, and more functional. Nevertheless, the Court recognizes that Ms. Street still experiences symptoms that she feels impact her ability to work. The ALJ also acknowledged Ms. Street's symptoms and functional limitations in the absence of any substance use disorders. As a result, the ALJ explicitly excluded any jobs that would require her to work at a production pace, even while completely sober. AR 22.

As mentioned during the hearing, the Court reminds Ms. Street that she may start a new application for Social Security Disability Insurance or Supplemental Security Income if her condition has changed since she originally applied. In any new application, Ms. Street is entitled to provide new evidence, including new medical records, to demonstrate that she meets Social Security's definition of disability.

## IV. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment (ECF No. 34) is DENIED, and the Commissioner's Motion for Summary Judgment (ECF No. 39) is GRANTED.

The Commissioner's final decision is AFFIRMED.

Judgment will be entered in favor of the Commissioner, and the Clerk shall close this file.

**IT IS SO ORDERED.**

Dated: March 25, 2024

EDWARD J. DAVILA
United States District Judge

Case No.: 5:21-cv-05697-EJD
ORDER ON MOTIONS FOR SUMMARY JUDGMENT
14